IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JEFFREY M.,[1]

Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,

Defendant.

Case No. 1:20-cv-01700-CL

**OPINION AND ORDER**

**CLARKE, U.S. Magistrate Judge.**

Jeffrey M. ("Plaintiff") brings this appeal challenging the Acting Commissioner of the Social Security Administration's ("Commissioner") denial of his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). This Court has jurisdiction to hear Plaintiff's appeal pursuant to 42 U.S.C. § 405(g), and the parties have consented to the jurisdiction of a U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

PAGE 1 – OPINION AND ORDER

reasons explained below, the Commissioner's decision is reversed and this case is remanded for further proceedings.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or based on legal error.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## BACKGROUND

### I. PLAINTIFF'S APPLICATION

Plaintiff filed his application for DIB on March 7, 2017, alleging disability as of December 2, 2015, due to: "Neck Problem; Back Problem; Herniated Disk; Shoulder Problem; Blindness; Vision Problems." (Tr. 131.) The Commissioner denied Plaintiff's application initially and upon reconsideration. (Tr. 127, 142.) Plaintiff then requested a hearing before an

PAGE 2 – OPINION AND ORDER

Administrative Law Judge ("ALJ"), which was held on January 17, 2019. (Tr. 95-111.) Supplemental hearings were held on June 25, 2019, and October 16, 2019. (Tr. 36-80, 83-92.) Following the administrative hearing on October 16, 2019, ALJ Steven De Monbreum issued a written decision dated December 23, 2019, denying Plaintiff's application. (Tr. 16-27.) The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-4.) Plaintiff now seeks judicial review of that decision.

## II.   THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *Id.* at 954. The Commissioner bears the burden of proof at step five of the analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d

PAGE 3 – OPINION AND ORDER

at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954.

### III. THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 18-27.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 2, 2015. (Tr. 18.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: "dysfunction of joints and degenerative disc disease of the lumbar and cervical spine." (Tr. 19.) At step three, the ALJ concluded that Plaintiff did not have an impairment, or combination of impairments, that meets or equals a listed impairment. (Tr. 20.) The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform "medium work as defined in 20 CFR 404.1567(c)" subject to these limitations: "[Plaintiff] can frequently climb ramps and stairs; frequently climb ladders, ropes, or scaffolds; and frequently balance, kneel, crouch, crawl, stoop and bend." (Tr. 20.) At step four, the ALJ concluded that Plaintiff was able to perform his past relevant work as an electrician. (Tr. 26.) At step five, the ALJ alternatively found that considering Plaintiff's age, education, work experience, and RFC, he could perform jobs that existed in significant numbers in the national economy including: janitor; laborer, stores; and cleaner II. (Tr. 27.) Accordingly, the ALJ found that Plaintiff was not disabled under the Social Security Act and denied his application for disability benefits. (Tr. 27.)

### DISCUSSION

In this appeal, Plaintiff argues: (1) "[t]he ALJ's RFC determination is not supported by substantial evidence because he failed to properly weigh the opinion of physical therapist, Michael Pennington," and (2) "[t]he ALJ's RFC determination is not supported by substantial evidence where he relied upon the stale opinion of a non-examining consulting examiner to

PAGE 4 – OPINION AND ORDER

determine that Plaintiff's mental impairments were not severe." (Pl.'s Opening Br., ECF No. 14, at 1.) As explained below, the Commissioner's decision regarding the opinion of Mr. Pennington is supported by substantial evidence, but the Commissioner's decision regarding Plaintiff's mental impairments is not supported by substantial evidence in the record. Accordingly, the Court reverses the Commissioner's decision and remands this case for further proceedings.

I.    NON-ACCEPTABLE MEDICAL SOURCES

Plaintiff argues the ALJ "failed to properly weigh the opinion of physical therapist, Michael Pennington." (Pl.'s Opening Br. at 1.)

A.    Applicable Law

Plaintiff filed his application on March 7, 2017; therefore, Social Security Regulation ("SSR") 06-03p applies. SSR 06-03p, 2006 WL 2329939, at *2 (rescinded by new medical rules but applicable to claims filed before March 27, 2017). "Only physicians and certain other qualified specialists are considered '[a]cceptable medical sources.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (quoting *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012)). Acceptable medical sources include: (1) licensed physician (M.D. or D.O.); (2) licensed psychologist (private or school); (3) licensed optometrist; (4) licensed podiatrist; and (5) qualified speech/language pathologist. 20 C.F.R. §§ 404.1502(a)(1)-(5), 416.902(a)(1)-(5). By exclusion, non-acceptable medical sources are all other medical sources that are not acceptable medical sources. "An ALJ may discount the opinion of an 'other source,' . . . if she provides 'reasons germane to each witness for doing so.'" *Popa v. Berryhill*, 872 F.3d 901, 906 (9th Cir. 2017) (citation omitted).

Germane reasons for discounting an "other source" include: (1) the fact that the other source relied to a large extent on a claimant's properly discounted self-reports; (2) the fact that the evidence from the other source is inconsistent with "objective evidence"; and (3) the fact that

PAGE 5 – OPINION AND ORDER

the other source's opinion is "inconsistent with the claimant's activities." *Chappelle v. Berryhill*, No. 6:16-CV-00444-SB, 2017 WL 2399581 (D. Or. June 2, 2017) (citing *Lombard v. Colvin*, No. 13-cv-1530-MC, 2015 WL 1477993, at *3 (D. Or. Mar. 31, 2015); *Ramirez v. Berryhill*, No. 15-02988, 2017 WL 1196728, at *15 (N.D. Cal. Mar. 31, 2017); *Vallandingham v. Colvin*, No. 14-cv-4847, 2015 WL 1467189, at *2 (C.D. Cal. Mar. 26, 2015)). "Moreover, [an] ALJ may reject the opinions of 'other' medical sources if they are unsupported by treatment notes or objective findings." *Denby v. Colvin*, No. 1:15-cv-00191-SB, 2016 WL 917313, at *3 (D. Or. Mar. 8, 2016) (citation omitted).

**B.     Analysis**

Plaintiff argues the ALJ's RFC determination is not supported by substantial evidence because he failed to properly weigh the opinion of physical therapist, Mr. Pennington, MSPT. (Pl.'s Opening Br. at 10.) The Court disagrees.

The ALJ discusses Plaintiff's physical therapist, Mr. Pennington, stating that Mr. Pennington,

> completed a physical assessment citing cervical radiculopathy and paresthesia and he noted that the claimant can only sit, stand, or walk for up to one hour []. He further opined that the claimant would need to take an hour break at unscheduled times during a workday, never lift more than 10 pounds, and he would likely miss work more than four times a week [].

(Tr. 25 (citing Tr. 1137-38) (internal citations omitted).) The ALJ stated "Mr. Pennington's opinion is given no weight as it is not consistent with the remaining evidence nor the claimant's own admitted ability to exercise and lift weights most days of the week." (Tr. 25.) The ALJ notes records from Providence Medical Group that indicate at a September 2019 examination,

> the claimant presented in no distress and appeared well-developed and well nourished []. He was unable to actively abduct his shoulders past roughly 90 degrees bilaterally. Otherwise, strength of his upper extremities is 5/5 and symmetric at shoulder with internal/external rotation, flexion/extension. Similarly,

PAGE 6 – OPINION AND ORDER

flexion/extension at the elbow is also 5/5 and symmetric. A follow up visit dated October 2, 2019 shows that the claimant went to the gym before his appointment and John Wei M.D. opined that his return to the clinic was due to his legal issue and application for disability, not acute illness or distress [].

(Tr. 25 (citing Tr. 1035-37, 1061; *see* Tr. 1062) (internal citations omitted).)

Additionally, the ALJ's reasoning that Mr. Pennington's opinion is not consistent with Plaintiff's own admitted ability to exercise and lift weights is supported by substantial evidence in the record. At the hearing, when asked how much weight Plaintiff lifts, he responded "[c]urrently like—it's on a machine, so—and then they have dumbbells and stuff, so I don't usually go over 20, 25 pounds." (Tr. 67-68.) Plaintiff further stated:

> I start my gym off with a massage, and then I'll do two muscle groups, start out light and I'll do three sets of exercises for that muscle group, and then for the other second muscle group another three exercises. And then I hit that water jet machine again, and then I go home and then I lay down and rest my back. . . . Monday, Wednesday, and Friday are the days that you lift weights for the muscles. And then Tuesdays and Thursday you do your cardio and your core and you exercise your stomach muscles and your back muscles, and you alternate your stomach—I have a trainer for all of this.

(Tr. 68.) The ALJ provided germane reasons to discount Mr. Pennington's opinion. Therefore, the ALJ did not err in assigning Mr. Pennington's opinion no weight and did not err by not incorporating the limitations provided by Mr. Pennington into Plaintiff's RFC.

## II.  MENTAL IMPAIRMENTS

Plaintiff argues the ALJ erred by finding Plaintiff's mental impairments were not severe. (*See* Pl. Opening Br. at 17.)

### A.  Applicable Law

At step two, a claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Murray v. Comm'r Soc. Sec. Admin.*, 226 F. Supp. 3d 1122, 1129 (D. Or. 2017); 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(h). A severe

PAGE 7 – OPINION AND ORDER

impairment "significantly limits" a claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a). An impairment is not severe "when [the] medical evidence establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." SSR 85-28, available at 1985 WL 56856, at *3. The step two threshold is low; "[s]tep two is merely a threshold determination meant to screen out weak claims." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017); *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (noting step two is a "de minimus screening device to dispose of groundless claims." (internal citation omitted)). The Plaintiff has the burden to show that he has a medically severe impairment or combination of impairments at step two. *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).

Where a claimant presents a colorable claim of mental impairments, the ALJ must determine whether the claimant has a medically determinable mental impairment and rate the degree of functional limitation in four areas utilizing the "psychiatric review technique" or the "paragraph B" criteria. *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 725 (9th Cir. 2011) (citing 20 C.F.R. § 404.1520a). A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques (i.e., objective evidence)." 20 C.F.R. §§ 404.1521, 416.921.

Effective March 27, 2017, the Social Security Administration ("SSA") revised the paragraph B criteria for assessing mental functioning. 20 C.F.R. § 404.1520a. Under the prior version, evaluators examined a claimant's activities of daily living; social functioning; concentration, persistence, and pace; and episodes of decompensation. 20 C.F.R. § 404.1520a (2016). Generally, these categories were rated on a five-point scale—none, mild, moderate,

PAGE 8 – OPINION AND ORDER

marked, or extreme—and a rating of "none" or "mild" in the first three areas and none in the fourth area typically dictated a finding that the mental impairments were not severe. *Id.* § 404.1520a(d)(1) (2016). The limitations identified in the paragraph B criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps two and three of the sequential evaluation process.

Under the new paragraph B criteria, the four broad functional areas were altered slightly: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintain pace; and (4) adapting or managing oneself. 20 C.F.R. § 404.1520a(b)-(d). The degree of limitations are also rated utilizing a five-point scale—none, mild, moderate, marked, and extreme—with "none" or "mild" typically resulting in the ALJ finding that the mental impairments are not severe. 20 C.F.R. § 404.1520a(d)(1).

In addition, a severe medically determinable impairment must meet the durational requirement under the Act, which means the impairment has lasted, or can be expected to last, 12 months or more. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505(a); 416.905(a). If any mental medically determinable impairment is severe, the sequential evaluation process proceeds to the RFC determination, which is used at steps four and five.

**B. Analysis**

The ALJ first discussed Plaintiff's mental health impairment of anxiety stating:

> The claimant's medically determinable mental impairment of anxiety does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere. The diagnosis of anxiety is carried forward in the claimant's past medical history since July 2015 []. Prior to the alleged onset date the claimant endorsed a two-year history of anxiety and depression but there are no records to substantiate the severity of his symptoms []. The record does not contain evidence of emergency treatment for acute psychiatric symptoms.

PAGE 9 – OPINION AND ORDER

(Tr. 19 (citing Tr. 408, 468, 478, 593, 658, 803, 850) (internal citations omitted).) The ALJ then discusses Plaintiff's other mental impairments stating:

> In August, September, and October 2019, the claimant engaged in behavioral health treatment citing depression, sleep dysfunction, difficulty concentrating, and visual, auditory, and tactile hallucinations []. He was diagnosed with several psychiatric disorders such as schizophrenia, schizotypal personality disorder, and major depressive disorder that do not meet the 12-month durational requirement []. Thus, they are not medically determinable impairments. The record does not substantiate limitations or restrictions due to his new mental diagnoses.

(Tr. 19 (citing Tr. 1075-1105, 1106-15, 1116-29) (internal citations omitted).)

In support of his determination, the ALJ stated:

> In making this finding, the undersigned has considered the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria. In understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself, the claimant has a moderate limitation. The record fails to establish more than mild limitations in these domains of functioning as the claimant can make independent decisions and follow through with instructions with regard to his health and completing daily activities.

(Tr. 19.)

The process for step two is to first determine whether the claimant has a medically determinable mental impairment and then rate the degree of functional limitation in four areas utilizing the "psychiatric review technique" or the "paragraph B" criteria. In addition, the severe medically determinable impairment must meet the durational requirement.

With respect to the ALJ's assessment of the Plaintiff's mental impairments, the ALJ applies the wrong standard. *Compare* 20 C.F.R. § 404.1520a (2016), *with* 20 C.F.R. § 404.1520a (2017). The ALJ uses the new paragraph B criteria despite Plaintiff's claim being filed before March 27, 2017. (Tr. 19.)

PAGE 10 – OPINION AND ORDER

Additionally, with respect to the ALJ's analysis of Plaintiff's diagnoses of schizophrenia, schizotypal personality disorder, and major depressive disorder, the ALJ conflates the medically determinable impairment analysis and the durational requirement. The ALJ stated the impairments "do not meet the 12-month durational requirement []. Thus, they are not medically determinable impairments," but acknowledges Plaintiff's objective medical evidence diagnosing him with these conditions. Therefore, the ALJ should have found Plaintiff's schizophrenia, schizotypal personality disorder, and major depressive disorder were medically determinable impairments. The durational requirement is separate from the medically determinable impairment analysis. With respect to the durational requirement, the ALJ should have addressed whether Plaintiff's mental impairments could be expected to last for 12 months or more.

Therefore, the ALJ erred at step two.

## III. REMEDY

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1176-78 (9th Cir. 2000). The court first determines whether the ALJ committed legal error; and if so, the court must review the record and decide whether it is "fully developed, is free from conflicts and ambiguities, and all essential factual matters have been resolved." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) (internal citation omitted). Second, the court considers whether further administrative proceedings would serve a "useful purpose." *Id.* at 407 (internal citation omitted). Third, if the court finds the record is fully developed and further administrative proceedings would not be useful, the court may credit the improperly discredited evidence as true and determine whether the ALJ would find the claimant disabled in light of this evidence. *Id.* (internal citation omitted). If so, the court may remand the case for an award of benefits,

although the court ultimately retains "discretion in determining the appropriate remedy." *Id.* at 407-08 (internal citation omitted).

Here, the Court concludes the ALJ committed legal error at step two. The Court finds, however, that remanding for further proceedings would serve a useful purpose. Accordingly, this case should be remanded for further administrative proceedings to: (1) reconsider Plaintiff's mental impairments, (2) apply the appropriate legal standard at step two, and (3) take any further action necessary to complete the administrative record, and issue a new decision. *See Burrell v. Colvin*, 75 F.3d 1133, 1141 (9th Cir. 2014).

## CONCLUSION

Based on the foregoing reasons, the Commissioner's decision is REVERSED and this case is REMANDED for further proceedings consistent with this opinion and order.

**IT IS SO ORDERED.**

DATED this 14 day of June, 2022.

HON. MARK D. CLARKE
United States Magistrate Judge